Filed June 21, 1890.

---

No. 14,055.

## MORGAN ET AL. *v.* KENDALL.

ASSAULT AND BATTERY.—*Action for Damages.—Refusal of Defendants to Testify.—Effect of.—Jury.*—Where, in an action to recover damages for an alleged assault and battery, the plaintiff after testifying to the identity of the defendants, calls the defendants as witnesses for the purpose of proving who committed the assault, and they decline to answer upon the ground that their answers would tend to criminate them, such refusal is a matter proper to be considered by the jury in connection with the testimony of the plaintiff.

SAME.—*Allegation as to Injuries.— What May be Proved Under.*—In such action, under allegations in the complaint that by reason of the injuries inflicted by the defendants the plaintiff was hurt and injured and became and was sick, the plaintiff may prove the extent of his injuries, as well as the extent of his physical and mental suffering, resulting im-

mediately from the assault and battery alleged in the complaint, and may recover for palpitation of the heart without alleging it by way of special damages.

SAME.—*Damages Accruing After Commencement of Suit.—Averment as to.*—In an action to recover damages for an assault and battery the plaintiff may recover such damages as are the natural result of his injury, without a specific averment, though such damages accrue after the commencement of the suit.

From the Clinton Circuit Court.

*T. J. Cason, W. A. Staley, J. C. Davidson* and *R. P. Davidson,* for appellants.

*C. S. Wesner, O. D. Wesner* and *R. W. Harrison,* for appellee.

COFFEY, J.—This was an action instituted in the Boone Circuit Court by the appellee against the appellants to recover damages for an alleged assault and battery. Upon a change of venue the cause was sent to the Clinton Circuit Court, where a trial by jury resulted in a verdict and judgment in favor of the appellee for the sum of four thousand dollars.

The complaint in the cause consists of two paragraphs. The first is in the form usually employed in actions of this kind. The second paragraph is as follows:

"And for his second paragraph of complaint herein the plaintiff says that the defendants, on the 7th day of June, 1886, at the county of Boone and State of Indiana, and about the hour of 12 o'clock at night, with force and violence took the plaintiff from his home to and into a certain field about the distance of a half mile from his home, and him the said plaintiff, the said defendants did then and there tie, fasten and lynch to a certain tree, and the said defendants did then and there strip and tear all the clothing from off the person and body of said plaintiff, and the said defendants did then and there with sticks, clubs, whips and switches beat, bruise and wound the said plaintiff on various parts of his body, by means whereof the said plaintiff was hurt and injured, and became and was sick, and the said

defendants, at the time they so beat and bruised the plaintiff as aforesaid, then and there ordered and commanded the plaintiff at once to leave and quit his said home and the said county, and then and there informed the plaintiff, and threatened that in case he should be found at his said home twenty-four hours thereafter they, said defendants, would take his life, and the plaintiff being greatly in fear of the defendants, and believing they would execute their said threats on his failure to comply with their said demand, did leave and abandon his said home and the county. And at the time of his being so compelled to leave said county and flee from his home by reason of the threats aforesaid, he was engaged in farming and had growing a large crop of corn, and he was compelled to and did abandon said crop and has thereby lost the same, and said crop at said time was of the value of one hundred and fifty dollars; and by being so driven away, as aforesaid, the plaintiff was thrown out of employment and was compelled to and did go among strangers and was at great expense in travelling about and paying for his living, to wit, the sum of $250; that by reason of the wrongs and injuries done him by the defendants, as in this paragraph alleged, he has been damaged in the sum of ten thousand dollars," etc.

The defendants answered by a general denial.

On the trial of the cause the appellee called each of the appellants as a witness for the purpose of proving the identity of the persons who committed the assault and battery charged in the complaint, but each of the appellants declined to answer the questions propounded to him, assigning as a reason therefor that by so doing he might subject himself to a criminal prosecution.

Upon this branch of the case the appellants requested the court, at the proper time, to instruct the jury as follows:

"17. Some of the defendants were made witnesses by the plaintiff, and declined to testify. The refusal of any one of them to testify is not a circumstance against them; it is not

evidence against them, and can not be so used. It raises neither presumption nor implication against them or him as to being guilty of the assault complained of. This refusal can not in any way aid the plaintiff, or add to the strength of his evidence. The same force of evidence is required to find a verdict for the plaintiff with, as without, the refusal made by the defendants. In other words, it is not a matter of consideration in your minds, or of discussion in the jury room. Your duty requires you to see that your minds are not involuntarily influenced by it.

" 18. The plaintiff must make out his case by proof of the affirmative fact, and the failure of the defendants to deny can not be a substitute for affirmative proof.

" 19. The fact that the defendants have not testified in their own behalf, is not a circumstance that can be considered against them, or against any one not so testifying."

The court refused to give these instructions, but gave the following :

" 6½. If, during the progress of the trial, any of the defendants in this action may have been called to the witness stand and declined to testify because of his privilege not to speak of the fact of the transaction, because it might subject him to a criminal prosecution, you are not to consider such refusal, or such claim of privilege from testifying, in determining the fact whether such defendant committed the act complained of against him, outside of, and independent of, this claim of privilege. The plaintiff must establish every material allegation contained in his complaint by a preponderance of the evidence given in the cause, and you will consider all other facts and circumstances present on the trial in determining what facts have been proved."

It is claimed by the appellants that the court erred in refusing the instructions asked, and, also, in giving that last above set out.

The only authorities cited by the appellants supposed to have any bearing upon the question now under consideration

are the cases of *Long* v. *State*, 56 Ind. 182, *Commonwealth* v. *Scott*, 123 Mass. 239, and *People* v. *Mannausau*, 60 Mich. 15.

The case of *Long* v. *State*, *supra*, throws no light upon the question now under consideration, as that was a case where the counsel for the State referred in argument to the fact that the defendant in the case, which was a criminal prosecution, had not testified. It was held that by reason of the terms of our statute upon the subject the judgment should be reversed.

The case of *Commonwealth* v. *Scott*, *supra*, was a case where the court permitted the prosecuting attorney to comment on the fact that the defendant, in a criminal case, did not testify in his own behalf, and the judgment was reversed for that reason.

. In the case of *People* v. *Mannausau*, *supra*, the witness, who refused to testify, was not a party to the prosecution, and it was held that his refusal to answer a question imputing to him a larceny, on the ground that his answer might subject him to criminal prosecution, was not to be considered as affecting his credibility.

None of these cases throw light upon the subject as to what effect, if any, is to be given to the refusal of a party to a civil action to answer questions when called by his adversary, upon the ground that his answers would subject him to criminal prosecution on account of the matters involved in the issues in that particular suit. It will readily be conceded that such refusal to answer could not be used against him in a criminal prosecution, for that would effectually deprive him of the benefit of the rule that a person in a criminal case can not be required to furnish proof against himself. *State* v. *Bailey*, 54 Iowa, 414.

The question here involved incidentally arose in the case of *Carne* v. *Litchfield*, 2 Mich. 340. In that case the plaintiff called the defendant as a witness, who declined to answer the question propounded to him, upon the ground that his answer thereto might tend to criminate him. During

Morgan *et al. v.* Kendall.

the argument of the cause counsel for the plaintiff was commenting upon the refusal of the defendant to answer the question propounded to him when on the witness-stand, whereupon counsel for the defendant interposed an objection. The court remarked, in the hearing of the jury, that such refusal of the defendant was not evidence against him, yet it was impossible to prevent the jury from hearing the whole case and knowing what was done, in open court, in the course of the trial before them, or to prevent counsel from commenting upon it. It was held that the refusal of the defendant to testify was not evidence against him, and that the court erred in not restraining counsel in their comments upon the fact of such refusal.

This case, however, has not escaped criticism. Attached to the case, and found in the volume where the same is reported, is the following note: " The precise point involved in this opinion does not seem to have arisen in either Illinois or Wisconsin, nor in any other case in Michigan. The more it is analyzed the more doubtful it will appear. A jury have the right, and it is their duty, not merely to listen to the words which a witness utters, but to note his manner of testifying—not merely to observe how far his knowledge extends, but to note equally where his ignorance, evasion, silence, hesitation, or lapses of memory occur; thus it becomes part of his manner to note in one sense both what he testifies to and what he declines to testify to, for certainly it is equivocal logic to say that if he stammers, hesitates, evades, etc., in testifying to a given matter, the jury may note his manner, but if he refuses to testify at all they can not. In what mental condition shall they stand? Shall they try to occupy the same position as if the witness had answered the question frankly, either in the affirmative or negative? This as a rule would be impossible. It is equally impossible for them to occupy the same mental attitude as if the question had not been asked. The true position would seem to be that while the declination of the witness to answer is not to

be taken as an admission of his guilt, yet it is a circumstance in his manner of testifying, which, like any other physical or mental circumstance, such as delay, pallor, evasion, etc., may with other circumstances be considered by them in weighing the witnesses' testimony. Indeed no judge or jury could avoid being differently affected by the refusal to answer than they would by the answer; and if the fact be so, it would seem to be idle ceremony for the judge at *nisi prius* to order that it should not be so."

The question now before us was directly involved in the case of *Andrews* v. *Frye*, 104 Mass. 234. In that case the question involved was as to whether the plaintiff had a license to sell intoxicating liquor. Upon being asked that question by the defendant the plaintiff declined to answer, assigning as a reason therefor that his answer might tend to criminate himself. In commenting upon this branch of the case the court said: "This refusal to answer, like any other refusal to produce evidence in his power, was competent evidence against him and his partner. A party offering himself as a witness in his own behalf stands differently in this respect from a third person brought into court to testify in a case in which he has no interest."

We think this case states the correct rule. Suppose A. institutes suit against B. to recover the value of a horse which A. alleges B. has stolen from him. On the trial of the cause A. testifies that he saw B. take the horse from the stable, and then places B. upon the witness stand and asks him if he did not take the horse at the time and place charged. B. declines to answer, alleging and stating as a reason that his answer would tend to criminate him. Can it be denied that such conduct on the part of B. tends to corroborate the testimony of A.? So in this case, the appellee had testified to the identity of the appellants, and when placed upon the witness stand and questioned in relation to the assault and battery, with which they were charged, they declined to answer upon the ground that their answers

Morgan *et al. v.* Kendall.

would tend to criminate them. We think such refusal was a matter proper to be considered by the jury, in connection with the testimony of the appellee. Nor does this holding violate the well known rule that a party in a criminal case shall not be compelled to furnish evidence against himself, for as we have seen, when prosecuted criminally, his conduct in refusing to testify in the civil case can not be given in evidence against him.

We do not think the court erred in refusing to give the instructions asked by the appellants.

The instruction given by the court was as favorable to the appellants as they had the right to ask. It is not erroneous in assuming the existence of the assault and battery charged in the complaint, as the existence of such assault and battery was not a disputed fact in the case. The controversy was over the identity of the parties who committed the wrong. In some particulars the instruction is somewhat obscure, but there is no reason to believe that the jury were misled thereby to the prejudice of the appellants.

The appellants, also, claim that the court erred in refusing to give to the jury instructions numbered three, four, five, and six, as asked by them. These instructions are as follows :

" 3. No damages are laid in the complaint for injuries running beyond the time of commencing the action, and under the evidence in this cause none can be allowed.

" 4. No special damages are laid in the complaint because of alleged injury to health or infirmities of any kind brought on by the alleged whipping, and there is no question of that kind before you.

" 5. The plaintiff has testified in regard to his having palpitation of the heart, and nervous debility, brought on, as he claimed, by the alleged assault and battery ; he has set out nothing of the kind in his complaint, and you are instructed to disregard any evidence upon the subject of such consequential results.

Morgan *et al. v.* Kendall.

"6. No special damages are laid in the complaint for the loss of time, nor is there any evidence upon that subject, and nothing of this kind can be allowed, nor for any alleged loss of crops."

The contention of the appellants is that the appellee can not recover in this action for palpitation of the heart, or for any other suffering peculiar in its nature, without alleging such peculiar suffering by way of special damages.

It is argued that the appellants are only liable for such damages as they had a right to expect as the natural consequences of their act, unless other damages are specifically alleged in the complaint; and as palpitation of the heart is not the natural or usual result of personal chastisement, the appellee can not recover on account of such suffering, in this action, because it is not specifically set forth in the complaint.

It is, no doubt, true that a party can not recover special damages without specifically alleging such damages in his complaint.

In 2 Sedgwick Damages (7 ed.), p. 607, the learned author quotes, with approval, from Mr. Chitty, the following: "Damages are either general or special. General damages are such as the law implies or presumes to have accrued from the wrong complained of. Special damages are such as really took place, and are not implied by law; and are either superadded to general damages arising from an act injurious in itself, as where some particular loss arises from the uttering of slanderous words actionable in themselves, or are such as arise from an act indifferent and not actionable in itself, but injurious only in its consequences, as where words become actionable only by reason of special damages ensuing. It does not appear to be necessary to state the former description of damages in the declaration; because presumptions of law are not, in general, to be pleaded or averred as facts. But when the law does not necessarily imply that the plaintiff sustained damage by the act complained of, it is es-

sential to the validity of the declaration that the resulting damages should be shown with particularity."

In a note on page 608 of the same work it is said the law presumes damages, and dispenses with their averment for bodily pain and suffering in actions for personal injury, citing *Curtis* v. *Rochester, etc., R. R. Co.,* 18 N. Y. 534, *Swarthout* v. *New Jersey Steamboat Co.,* 46 Barb. 222.

In such actions the plaintiff may also recover for mental suffering without any specific averment upon the subject. *Wright* v. *Compton,* 53 Ind. 337; *Ohio, etc., R. R. Co.* v. *Hecht,* 115 Ind. 443, and cases cited.

The complaint in this case alleges that by reason of the injuries inflicted by the appellants he was hurt and injured, and became and was sick. Under these allegations we think the appellee might prove the extent of his injuries, as well as the extent of his physical and mental suffering, resulting immediately from the assault and battery alleged in his complaint. Such physical and mental suffering was not the subject of special damages within the legal meaning of that term, and it was not necessary to specifically set them out in the complaint. For this reason the court did not err in refusing to give the fourth and fifth instructions asked by the appellants.

The third instruction asked is not the law in any aspect of the case, and should not have been given. In an action to recover damages for an assault and battery the plaintiff may recover such damages as are the natural result of his injury, without specific averment, though such damages accrue after the commencement of the suit. *Birchard* v. *Booth,* 4 Wis. 85.

The sixth instruction asked relates to a matter not within the issues or the evidence in the cause, and was properly refused by the court. The court instructed the jury correctly as to the measure of damages.

Finally, it is contended by the appellants that the damages assessed by the jury are excessive. We do not agree with

this contention. The assault and battery charged, and proven on the trial, was of an aggravated character, and the jury who heard the evidence, and had the parties and witnesses before it, were the best judges of the amount necessary to compensate the appellee for the injuries he had received at the hands of the appellants.

There is no error in the record.

Judgment affirmed.

Filed April 25, 1890; petition for a rehearing overruled June 25, 1890.