IRMA BIRCKHEAD *v.* MAYOR AND CITY COUNCIL
OF BALTIMORE

[No. 19, January Term, 1938.]

*Decided March 8th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SHEHAN, and JOHNSON, JJ.

*Paul F. Due,* with whom were *Due & Nickerson* on the brief, for the appellant.

*Lawrence B. Fenneman* and *M. Henry Goldstone, Assistant City Solicitors,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The action in this case is to recover damages of the Mayor and City Council of Baltimore, a municipal corporation, for injuries sustained by the plaintiff, a guest of the driver of an automobile, as a result of the collision of the automobile with large stones alleged to have

been negligently placed on the edge of the west side of a public driveway of the municipality in its public park. A demurrer to the original declaration and one to an amended declaration were sustained, and a judgment for the defendant was entered. The appeal is taken to review the rulings of the court, and requires a particular statement of the allegations upon which the pleader depends to constitute a cause of action.

The accident happened in a municipal park of the defendant, through which a metaled public way, known as Pimlico Drive, extends from Mt. Royal Terrace to Park Heights Avenue, which are both public streets of the defendant without the boundaries of the park. Pimlico Drive is largely used by motorists as a convenient link in heavy through travel to points within and without the municipality. On February 1st, 1937, at about two o'clock on a foggy morning, the automobile in which the plaintiff was riding as guest had entered the park and was being driven by her host northward on the east side of Pimlico Drive. Another automobile, which was traveling south on the east or wrong side of Pimlico Drive, suddenly appeared in the lane of travel of the host's automobile, and, so confronted, the host, in order to avoid being struck by the other automobile, swerved his automobile to the west or left side of the drive, and, leaving the highway, the automobile in which the plaintiff was a guest struck the rocks with such force that the plaintiff was thrown violently forward in the automobile and there injured.

The sole negligence attributed to the defendant is placing permanently the line of rocks near the west margin of the highway at the scene of the accident. Approximately three hundred feet south of the collision, Pimlico Drive is intersected by a public way called Gwynn Falls Parkway. South of this intersection, until the Pimlico Drive and its outlet ends at the southern entrance of the park at Mount Royal Terrace, a distance of from one-half to three-fourths of a mile, the thoroughfare is bounded on both sides by concrete curbs, about six inches

high and wide, which are of light concrete color and are more readily distinguished than the rocks. The cement curb does not extend north of the mentioned intersection. For the first hundred feet north of the intersection there are no rocks bounding along the western limit of Pimlico Driveway, but beyond this distance and extending further than the place of the accident there are rocks on that side, but none at all to the east of the Pimlico Driveway from the intersection with Gwynn Falls Parkway north to the union with Park Heights Avenue.

The roadway was curved at the place of the accident, and was level with the adjacent ground of the park. The improved road bed was approximately twenty-five feet wide, with a shoulder from fifteen to eighteen inches wide and of the same color and level as the roadway. The rocks were of irregular sizes and shapes, with sharp and jagged edges, and ran from two feet to thirty inches in height, two to three feet in width and four to five feet in length. They are alleged to be a "dark grayish brown color that blends so perfectly with the bed of said Pimlico Drive and with the adjoining turf in the month of February as to render them almost indistinguishable at night under the type and character of lights maintained by the defendant along said highway even under normal weather conditions." It is further charged that the rocks were completely obscured, at the time of the accident, because of the fog. The rocks are stated to have been placed in a line outside of, and parallel to, the western limit of the western shoulder of the improved roadway. So, it was requisite for the plaintiff's automobile to leave the metaled surface of the road-bed by crossing from the right to the left side of the road, and then to traverse the shoulder on the western limits of the highway, before the automobile could come in contact with the rocks.

The first fact to be noted is that whether the driver of the automobile was, under the circumstances stated, guilty of negligence in the control of his automobile, which would bar him from recovery, is not a material

consideration in the appeal at bar, because the plaintiff here is a guest, who is alleged to have been without fault, and any negligence of her host and driver is not imputed to her. Consequently, the single question is whether or not there was any breach of duty on the part of the municipality which was the proximate cause of the accident from which the plaintiff suffered her injury. *Baltimore v. State, use of Cirtout,* 146 Md. 440, 450, 126 A. 130; *Kent County v. Pardee,* 151 Md. 68, 75, 76, 134 A. 33.

The declaration alleges no facts from which negligence appears either in the construction, care, or maintenance of the highway. There is no suggestion in the pleading that the roadway was not of sufficient width, nor that there was any defect in its surface or in its state of repair, nor that there was any object or condition within the limits of the highway (1) or so close to the traveled right of way, as would create a reasonable probability of an accident occurring to the traveler while on the highway. *Baltimore v. Terio,* 147 Md. 330, 334, 336, 128 A. 353; *Phelps v. Howard County,* 117 Md. 175, 178, 82 A. 1058; *Earp v. Phelps,* 120 Md. 282, 87 A. 806; (1) *Mayor and City Council of Baltimore v. Thompson,* 171 Md. 460, 467, 189 A. 822; *Meese v. Goodman,* 167 Md. 658, 667-669, 176 A. 621. In the case at bar the complaint is not in connection with any thing or condition within the wrought, metaled, surface of the highway and its shoulders, but is in regard to a line of rocks without the extreme limits of the highway. So, the plaintiff seeks to hold the defendant liable for an injury received beyond the limits of the highway. If the traveler goes outside of the bounds of the highway he cannot, as a general rule, recover of the municipality for injuries sustained as a result of a condition encountered beyond these limits. 3 *Blashfield, Cyclopedia of Automobile Law,* sec. 11, p. 2167; *Doherty v. Town of Ayer,* 197 Mass. 241, 83 N. E. 677; *Briglia v. City of St. Paul,* 134 Minn. 97, 158 N. W. 794.

The street or highway may, however, be unsafe for

travel because of the presence in close proximity to its boundaries of dangerous excavations, declivities, embankments, deep water, or other perils. The dangers to travelers of such places, when near and so connected with the traveled part as to render the highway not reasonably safe for travel, cast upon the municipality the duty to provide suitable safeguards for the protection of the public in the use of the street or highway. The risk to the traveler must, however, be such that he, while in the use of reasonable care in passing along the street or highway in an ordinary manner, may probably be injured by being thrown or falling into the dangerous place, unless a railing, barrier, or other safeguard make the way itself safe and convenient. The obligation is to safeguard the traveler from a danger of an unusual character. The rule is set forth in *Roth v. Highways Commission*, 115 Md. 469, at pages 476, 477, 80 A. 1031, 1034: "In 15 *Am. & Eng. Encyc. of Law*, 455, after saying that a municipality is not required to fence its roads, or put up barriers simply to prevent travelers from straying from the highway, the law is thus stated: 'If there is a dangerous place, however, such as a declivity or excavation, so close to the highway or to the traveled part thereof as to render the latter unsafe for travelers in the absence of a railing or barrier, the want of such railing or barrier constitutes a defect in the highway itself, for injuries from which the municipality is liable. But the danger which requires a barrier must be of an unusual character, such as a bridge, declivity, excavation, steep bank, or deep water, and a space adjoining a road or street may be left without a barrier though it is rough and entirely unsuitable for travel.' " *Baltimore v. State, use of Cirtout*, 146 Md. 440, 447-449, 126 A. 130; *Balto. & O. R. Co. v. Boteler*, 38 Md. 568, 584, 585; *Kent County v. Pardee*, 151 Md. 68, 75, 134 A. 33; *Garrett County v. Blackburn*, 105 Md. 226, 66 A. 31; *Anne Arundel County v. Vanskiver*, 166 Md. 481, 483, 484, 171 A. 705; *Bond v. Inhabitants of Billerica*, 235 Mass. 119,

126 N. E. 281; *Waterhouse v. Calef*, 21 R. I. 470, 44 A. 591.

The dangerous place or condition must be such as would create a reasonable probability of an accident thereby occurring to the traveler. "Ordinary care" is the measure of the duty required, and its exercise does not exact that the municipality guard against unusual or unforeseen accidents. No user of the highway described is in any peril from any act or default of the municipality so long as the traveler keeps within the well defined limits of a wrought highway. Nor is there any dangerous condition shown to exist in or near the highway. A trespass is committed if one goes beyond the highway boundaries. So, a reasonable person, acting prudently, would not be under obligation to erect barriers, signals, illuminated signs, or other warnings to relieve himself from liability to trespassing persons who must leave the highway to enter upon his property and there sustain injuries because of a collision with objects in common use and of no inherent danger, nor rendered dangerous by reason of their position. Consequently, there is nothing in the declaration which shows a situation that would cause the municipality to anticipate that any traveler would, in the exercise of due care, leave the bounds of a highway, whose width was not less than twenty-five feet, and, therefore, ample to permit the safe use and passage, within the confines of the highway, of vehicular traffic which moves in the same direction or meets while going in opposite directions.

Since the highway, when considered in connection with its adjacent area, was safe for public travel, the municipality was under no obligation to put up railings, barriers, or to employ warnings or signals, to prevent travelers from leaving the highway and going upon adjacent land, there to be injured by running against large stones or rocks lying on the ground, even though there is nothing to mark the boundary line of the highway. 13 *R. C. L.*, sec. 348, pp. 426, 427; *Shea v. Town of Whitman*, 197 Mass, 374, 83 N. E. 1096; *Doherty v. Ayer*, 197 Mass.

241, 83 N. E. 677; *Sparhawk v. Salem,* 1 Allen, Mass., 30; *Macomber v. Taunton,* 100 Mass. 255; *Puffer v. Orange,* 122 Mass. 389; *Damon v. Boston,* 149 Mass. 147, 151, 21 N. E. 235; *Waterhouse v. Calef,* 21 R. I. 470, 44 A. 591; *Chapman v. Cook,* 10 R. I. 304; *Barnes v. Chicopee,* 138 Mass. 67; *Bell v. Wayne,* 123 Mich. 386, 82 N. W. 215; *Mineral City v. Gilbow,* 81 Ohio St. 263, 90 N. E. 800; *Dougherty v. Horseheads,* 159 N. Y. 154, 53 N. E. 799, 801. And see *Crocker v. Orono,* 112 Me. 116, 90 A. 978; *Young v. Yarmouth,* 9 Gray (Mass.) 386; *Hall v. Wakefield,* 184 Mass. 147, 68 N. E. 15; *Washburn v. Easton,* 172 Mass. 525, 52 N. E. 1070; *Smith v. Wakefield,* 105 Mass. 473; *Matson v. Pierce County,* 94 Wash. 38, 161 P. 846, 848; *Dubois v. Kingston,* 102 N. Y. 219, 6 N. E. 273; *Tiesler v. Norwich,* 73 Conn. 199, 47 A. 161.

The emergency depicted in the declaration arose from the sudden meeting on a foggy night of two automobiles, which were traveling in opposite directions but on the same side of the highway. Immediate action was necessary to avert a collision, which could have been done by stopping or by passing one another within the limits of the roadway. *Kaline v. Davidson,* 146 Md. 220, 224, 225, 126 A. 68; *Kelly v. Huber Baking Co.,* 145 Md. 321, 334, 125 A. 782. The turning of his automobile to the left by the host of the plaintiff may have not been negligent because of the emergency, but, after turning to the left, the failure to keep within the limits of the highway was due to the driving of the host. The declaration alleges that he had sufficient roadway to pass between the south bound automobile and the rocks, and would have done so if the rocks had been visible by reason of some artificial marking. If the host could not, with the aid of his headlights, see and continue on the distinctive, wrought, road-bed immediately ahead of his automobile because of the fog at night, no artificial coloration would have made visible the more distant rocks. Hence, it cannot be maintained that negligence on the part of the municipal landowner existed because of the presence and location of the line of rocks on its premises near the

highway but outside its limits, inasmuch as there was neither a reasonable likelihood of danger to a user of the highway, to be anticipated by a careful and prudent person as a consequence of the kind and place of the rocks, nor does the injury suffered by the plaintiff appear to have been the natural and probable consequence of an act or omission on the part of the municipality in connection with the highway or with the defendant's adjacent land. The injury here arose out of a combination of circumstances against which the exercise of ordinary care on the part of the municipality would have furnished no protection. In *West Virginia Central & P. R. Co..v. State*, 96 Md. 652, 666, 54 A. 669, 671, it was said: "In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury." See *Palsgraf v. Long Island R. Co.*, 248 N. Y. 339, 162 N. E. 99, 100; *Hubbell v. Yonkers*, 104 N. Y. 434, 10 N. E. 858; *Herr v. Lebanon*, 149 Pa. 222, 24 A. 207; *Kieffer v. Hummelstown*, 151 Pa. 304, 24 A. 1060; *Hagerstown v. Foltz*, 133 Md. 52, 60, 104 A. 267.

For the reasons stated, the judgment will be affirmed.

It is urged in the instant case that the municipality is not liable because the construction and maintenance of the highways through the parks of the municipality are governmental functions. On this and other questions not herein explicity decided the court does not express nor indicate an opinion by this decision.

*Judgment affirmed, with costs to the appellee.*